```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
DM RECORDS, INC.,                                :
a Florida Corporation,                           :
                                                 :   1:11-cv-21465-UU
                      Plaintiff,                 :
                                                 :
    - against -                                  :
                                                 :
WARNER MUSIC GROUP CORP.,                        :
a Delaware Corporation,                          :
                                                 :
                      Defendant.                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

## MOTION TO INTERVENE OF
## REP SALES, INC., d/b/a RYKO DISTRIBUTION
## AND SUPPORTING MEMORANDUM OF LAW

REP Sales, Inc., d/b/a Ryko Distribution ("Ryko"), by its attorneys, Macht, Shapiro, Arato & Isserles LLP and Gray Robinson, P.A., and pursuant to Federal Rule of Civil Procedure 24(b), respectfully files its motion to intervene in this action and submits this supporting memorandum of law.

### PRELIMINARY STATEMENT

Plaintiff DM Records, Inc. ("DM") commenced this action on April 26, 2011, less than four months ago, alleging that Warner Music Group Corp. ("WMG") infringed Plaintiff's copyrights in various sound recordings because WMG purportedly "continued distributing and selling" those recordings after the alleged termination of a distribution agreement authorizing such activity. *See* Complaint ("Cmplt.") ¶ 20. As DM plainly knows, WMG was never a party to the distribution agreement at issue here, and WMG never engaged in the distribution or sale of Plaintiff's sound recordings. Rather, it is

# 536080 v1

Ryko, an indirect subsidiary of WMG, who is a party to that distribution agreement and who distributes and sells DM's works.

As a result of the above, Ryko is the appropriate defendant in this case; it is Ryko's conduct, not WMG's, that is at issue here, and Ryko's current and former employees and Ryko's documents will supply the needed evidence. Accordingly, Ryko moves to intervene in this action pursuant to Federal Rule of Civil Procedure 24(b) so that it may defend itself against DM's attacks.

Ryko should be permitted to intervene under established Eleventh Circuit law. *First*, Ryko's motion to intervene is timely and does not prejudice the existing parties. The motion is brought a mere four months after the commencement of the action, within the court's deadline for joinder of parties and amendments of the pleadings, well in advance of any motion practice or significant discovery, and four months before the close of discovery. *Second*, Ryko's proposed defenses share common questions of fact and law with the main action alleged against WMG. Not surprisingly, Ryko's defenses are identical to WMG's, given that it is Ryko's relationship with DM that lies at the heart of this case. The same can be said for Ryko's counterclaims, which add specifics to WMG's existing affirmative defenses of unclean hands and copyright misuse, among others.

## FACTUAL BACKGROUND

Plaintiff filed its Complaint on April 26, 2011, seeking relief for alleged copyright infringement by WMG based on WMG's purported distribution and sale of Plaintiff's copyrighted sound recordings after the alleged termination of a distribution agreement. *See* Cmplt. ¶¶ 27-35.

As Plaintiff concedes, however, Ryko is the party to that agreement, not WMG. *See id.* ¶ 14 ("DM Records entered [into] an exclusive distribution agreement ("Distribution Agreement") with REP Sales, Inc. d/b/a Ryko Distribution ("Ryko") in 1999."). As Plaintiff also concedes, Plaintiff and Ryko (not WMG) amended that agreement in February 2007 regarding Ryko's right to digitally distribute Plaintiff's sound recordings. *See id.* ¶ 16 ("In 2007, DM and Ryko modified certain terms of the Distribution Agreement" to address the "distribution of DM's digital catalog of songs . . . ."). Accordingly, as Plaintiff also tacitly concedes, Ryko is the entity that distributed Plaintiff's works digitally. *See id.* ¶ 18 ("The Digital Agreement ended on March 1, 2009." "At that time, *Ryko*/WMG no longer had any right to continue distributing the Copyrighted Works.") (emphasis added).

For each of these reasons, Ryko (not WMG) is the entity best suited to defend this action, and Ryko moves to intervene in order to assert its own defenses and counterclaims to Plaintiff's charges, all of which, by definition, are inexplicably intertwined with this existing action. *See* Declaration of Cynthia S. Arato, dated August 19, 2011 ("Arato Dec."), Exh. A ("Answer and Counterclaims of Defendant REP Sales, Inc., d/b/a Ryko Distribution").

Among other things, Ryko will demonstrate that Plaintiff's infringement claim is based on the erroneous contention that Ryko's digital distribution rights under the agreement terminated in March 2009. *See id*. at Counterclaim ("CC") ¶ 4. Ryko will also demonstrate that for over two years after this alleged "termination" Plaintiff accepted without complaint accounting statements documenting Ryko's receipt of the nominal digital revenue now at issue, thus belying Plaintiff's current contention regarding any

alleged termination and, in any event, evidencing that Plaintiff acquiesced in those reports and/or is contractually barred from challenging them at this late date. *See id*. at CC ¶¶ 3-4. Ryko will also demonstrate that Plaintiff is bringing this action for improper purposes and to coerce Ryko into compromising other claims that Ryko possesses against Plaintiff, all of which constitutes copyright misuse. *See id*. at CC ¶ 17.

Finally, Ryko will demonstrate that it is entitled to an offset or recoupment against DM, and that DM comes to this court with unclean hands, given that DM willfully violated the parties' distribution agreement by exploiting a number of its recordings via ISPs which DM promised were to be exclusive to Ryko. *See id*. at CC ¶¶ 5, 15. Ryko therefore seeks to bring its own counterclaim against DM for breach of contract. *See id*. at CC ¶¶ 11-18.

Counsel for Ryko and for Plaintiff conferred by email and telephone regarding this motion. Although counsel for Plaintiff indicated that he did not anticipate that he would object to the addition of Ryko as a party defendant, he understandably reserved decision pending an opportunity to review a copy of Ryko's proposed filing. Counsel for Ryko was not, however, able to provide Plaintiff's counsel with a copy of the proposed filing in advance of the filing deadline.

## ARGUMENT

### I.   Ryko Should Be Permitted to Intervene in this Action

Federal Rule of Civil Procedure 24(b) governs permissive intervention and provides that: "On timely motion, the court may permit anyone to intervene who: . . . (B) has a claim or defense that shares with the main action a common question of law or fact." An entity seeking to intervene under Rule 24(b) must therefore satisfy two

elements: (1) it must file a timely application; and (2) its claims or defenses must share a common question of law or fact with the main action. *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989). Ryko satisfies both elements here.

### A.   Ryko's Motion for Permissive Intervention is Timely

The Eleventh Circuit employs a four factor test in assessing the timeliness of a motion to intervene, including: (1) the length of time during which the would-be intervenor knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene; (2) the extent of prejudice to the existing parties as a result of the would-be intervenor's failure to apply as soon as he knew or should have known of his interest; (3) the extent of prejudice to the would-be intervenor if his petition is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely. *Meek v. Metropolitan Dade County, Fla.*, 985 F.2d 1471, 1478-79 (11th Cir. 1993), *abrogated on other grounds*, *Dillard v. Chilton County Com'n*, 495 F.3d 1324 (11th Cir. 2007); *Chiles*, 865 F.2d at 1213. This Circuit has made clear, however, that "[t]imeliness is not a word of exactitude or of precisely measureable dimensions" but rather "must have accommodating flexibility toward both the court and the litigants." *Chiles*, 865 F.2d at 1213. The "essence" of the timeliness inquiry is prejudice to the existing parties, namely the "prejudice which would result from the would-be intervenor's failure to request intervention as soon as he knew or reasonably should have known about his interest in the action," not "any prejudice that would result by intervention." *Meek*, 985 F.2d at 1479.

Ryko should be permitted to intervene under this multi-factor test for several reasons. First, Ryko moves to intervene within a short, reasonable period after learning

of its interest in this case and in advance of the occurrence of significant litigation events. Specifically, Ryko files this motion less than four months after Plaintiff filed its Complaint, within approximately three weeks of entry of the Court's scheduling order, before the expiration of the Court's deadline for motions to join parties or amend pleadings, at the very beginning of discovery,[1] and prior to any mediation. *See* Docket Sheet #1 (Complaint, dated April 26, 2011), #19 (Scheduling Order, dated July 27, 2011).

Courts in this Circuit have routinely found timely motions for leave to intervene filed at points substantially further into litigation, including following motion practice or the close of discovery. *See, e.g.*, *Chiles*, 865 F.2d at 1213 (holding timely motion to intervene filed "*only* seven months after" complaint and three months after defendant's motion to dismiss and citing with approval Fifth Circuit decision[2] finding timely an intervention motion filed "more than a year after the action was commenced" where "no legally significant proceedings other than the completion of discovery" had occurred) (emphasis added); *Ruderman v. Washington Nat'l Ins. Co.*, 263 F.R.D. 670, 677-78 (S.D. Fla. 2010) (intervenors acted "reasonably quickly" in filing motion to intervene eight months after complaint and "less than four months" after amended complaint added claim relevant to intervention); *Armor Screen Corp. v. Storm Catcher*, No. 07-81091-Civ., 2008 WL 5749638, at *6 n.2 (S.D. Fla. 2008) (holding timely motion to intervene filed seven months after complaint, three months after entry of scheduling order, and following

---

[1] To date, the parties have exchanged document requests and WMG has served interrogatories on Plaintiff. The responses to these requests are not yet due and no other discovery has been served. Arato Dec. ¶ 2.

[2] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

commencement of discovery, even where court was "troubled" by evidence that intervenor had been aware of his rights for two years prior to the filing of the complaint).

Moreover, Plaintiff will not be prejudiced by a granting of Ryko's motion to intervene. Because Ryko – not WMG – is the party to the distribution agreement that lies at the heart of this action[3] and because, as discussed *infra* at Point I.B., Ryko's asserted defenses and counterclaims share common questions of law and fact with the existing action, Ryko's intervention will not delay discovery or otherwise impede the case schedule.

Denial of the motion, in contrast, will harm WMG. As explained above, Ryko is the entity best suited to defend against Plaintiff's claims because Plaintiff's claims involve Ryko's conduct, not WMG's. Accordingly, Ryko should be allowed to intervene in this case so that it can defend itself against Plaintiff's claims.

For each of these reasons, this Court should find that Ryko has moved to intervene in a timely fashion.

### B. Ryko's Proposed Defenses and Counterclaims Share Common Questions of Law and Fact with the Main Action

Ryko's proposed defenses and counterclaims share common questions of law and fact with the main action.

As set forth above, Ryko's defenses mirror those previously asserted by WMG (although WMG obviously possesses the additional defense that it cannot be held liable

---

[3] It is not clear why Plaintiff sued WMG. WMG is merely the indirect ultimate corporate parent of Ryko. As such WMG cannot be liable for Ryko's distribution activities. *See, e.g.*, *Spanish Broadcasting Sys. v. Clear Channel Communications, Inc.*, 242 F. Supp. 2d 1350, 1363 (S.D. Fla. 2003). Although WMG should, accordingly, be dismissed from this action, we are not seeking that relief by this motion, which merely seeks to add Ryko to the case.

merely because it is Ryko's indirect corporate parent and thus did not, in fact, engage in any of the challenged conduct).  Accordingly, by definition, Ryko's defenses share common questions of law and fact with the main action.

The same is true for Ryko's counterclaims.  For example, WMG has alleged a defense of unclean hands.  That defense is based on the same conduct that underlies Ryko's counterclaim for breach of contract; namely, DM's willful violation of Ryko's exclusive distribution rights in 2007.

WMG's unclean hands defense, and its defense of copyright misuse, are also based on additional conduct that underlies Ryko's breach of contract counterclaim.  As set forth in that counterclaim, Ryko and DM are defendants in a separate copyright infringement lawsuit pending in the United States District Court for the Southern District of New York (the "New York Action"), in which a third party has claimed that various sound recordings owned by DM, and thus distributed by Ryko, infringe the third parties' copyrighted works.  Under the terms of the parties' distribution agreement, DM is required to indemnify Ryko for the expenses (including legal fees) that Ryko incurs defending itself in the New York Action, and DM must reimburse Ryko for the same.

Although DM initially complied with its indemnity obligations under the distribution agreement, DM then refused to reimburse Ryko for the legal fees it has been forced to incur on an ongoing basis to defend itself in the New York action.  Instead, on information and belief, DM improperly instituted this action to coerce Ryko into compromising its indemnity rights arising out of the New York Action.  Accordingly, Ryko intends to demonstrate that DM's conduct constitutes a breach of its contractual indemnity obligations as well as unclean hands and copyright misuse, which "prohibits a

copyright holder from using a copyright to secure an exclusive right or limited monopoly not granted by the [Copyright] Office . . . ." *Tingley Sys., Inc. v. Healthlink, Inc.*, 509 F. Supp. 2d 1209, 1219 (M.D. Fla. 2007) (internal quotations omitted).

Because the issues raised by Ryko's counterclaims are inextricably intertwined factually and legally with the issues already raised in this action, Ryko's motion to intervene satisfies the second prong of the test for permissive intervention.

## CONCLUSION

For all of these reasons, Ryko respectfully requests that this Court grant its motion to intervene pursuant to Federal Rule of Civil Procedure 24(b) and permit it to file its Answer and Counterclaims.

Respectfully submitted,

Dated: New York, New York
August 19, 2011

        GRAY ROBINSON, P.A.

        By: __/s/ Karen L. Stetson_____
           Karen L. Stetson

        1221 Brickell Avenue, Suite 1600
        Miami, Florida 33131
        Telephone: (305) 416-6880
        Facsimile: (305) 416-6887
        Karen.Stetson@gray-robinson.com

        -and-

        Cynthia S. Arato
        Danna Drori
        MACHT, SHAPIRO, ARATO & ISSERLES LLP
        The Grace Building
        1114 Avenue of the Americas, 45th Floor
        New York, NY  10036
        Telephone:  (212) 479-6724
        Facsimile: (212) 202-6417
        carato@machtshapiro.com

        *Attorneys for Warner Music Group Corp. and Ryko*